D.P. v S.P. (2025 NY Slip Op 25042)

[*1]

D.P. v S.P.

2025 NY Slip Op 25042

Decided on February 20, 2025

Supreme Court, Westchester County

Hyer, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on February 20, 2025
Supreme Court, Westchester County

D.P., Plaintiff,

against
S.P., Defendant.

Index No. XXXXX

Plaintiff- Lisa Zeiderman, Esq, Miller Zeiderman LLP, 140 Grand Street 5th Floor, White Plains, NY 10601
Defendant- Dina S. Kaplan, Esq., Berkman Bottger Newman & Schein, LLP, 445 Hamilton Avenue 15th Floor, White Plains, NY 10601

James L. Hyer, J.

During trial pertaining to the above-captioned action, Plaintiff's counsel made an application to strike portions of Defendant's testimony regarding Defendant's use of e-mail tracking technology with respect to e-mails sent by Defendant to Plaintiff.
 Relevant Factual and Procedural History
On October 21, 2022, this matrimonial action was commenced with the filing of a Summons with Notice (NYSCEF Doc. No. 1).
On May 28, 2024, a Pre-Trial Conference Order was entered directing trial to commence on January 3, 2025.
On February 11, 2025, during the trial, Defendant provided sworn testimony that he had utilized e-mail tracking software known as Streak with respect to e-mails sent to Plaintiff during this litigation. Defendant testified that for e-mails he had sent to Plaintiff, he was able to determine when the e-mail was opened, the location of where it was opened, if any attachments were opened, as well as other information.
On February 13, 2025, the next day when the trial continued, the Court addressed this testimony inquiring of all counsel if any concerns existed. Following discussion on the record, counsel set forth terms of a stipulation that following the stipulation neither party would utilize e-mail tracking technology for e-mails sent to the other. Plaintiff's counsel then made an [*2]application to strike the portions of Defendant's testimony pertaining to Defendant's use of e-mail tracking software which was denied. 

Legal Analysis
While e-mail tracking technology was developed years ago[FN1]
, the use of such software with respect to potential implications on litigants involved in family law and matrimonial litigation, appears to be a case of first impression. Due to Defendant's testimony pertaining to his use of e-mail tracking technology for e-mails sent to Plaintiff during this litigation and the subsequent bench ruling made by this Court during the trial regarding this conduct, the Court's analysis will be further set forth herein. 
In discussing e-mail tracking, one scholarly article describes the technology and notes the difficulty, it not impossibility, of an e-mail recipient protecting themselves from certain information being made available to the e-mail sender:
"A web bug, also called a web beacon, pixel tag, clear GIF or invisible GIF, is software that allows email senders to track the path a message takes, including when the email was opened, how long it was reviewed, how many times it was viewed, the approximate location of the recipient and the email address of any persons to whom the email is forwarded.
* * *
Web bugs can also be embedded in documents and provide similar information to the person sending the document. Because a web bug tracks information as soon as an email is read, a recipient cannot "clean" the email until after the information has been provided to the sender. Moreover, other than viewing email in text format (rather than in HTML, which displays images, etc.), which is not desirable to most users, it is impractical, if not impossible, for recipients to proactively protect themselves from web bugs."[FN2]
Turning to the specific technology utilized by Defendant to track e-mails sent to Plaintiff, the Streak website offers insight into how the software operates and what data may be retrieved by the e-mail sender:
"Email Tracking works by inserting a teeny tiny image, called a tracking pixel, into an email. When the receiver opens the email, their email provider has to make a request to our server to retrieve the tiny image. Depending on the individual user settings, the mail program settings, and the device, we receive varying amounts of information about the recipient when they open the tracking image and count this as a "view." If the pixel is [*3]never opened, we receive no information at all."[FN3]

A video tutorial on the Streak website indicates that the software may allow the sender to determine the e-mail recipient's city-level location when accessing the sender's e-mail."[FN4]

Thus, e-mail tracking technology may be utilized to facilitate an individual sending an e-mail to a specific intended recipient in an effort to obtain that recipient's location and/or movements. Beyond creating a significant risk to the expectation of privacy of the intended e-mail recipient, the use of such technology may also be used to curtail address confidentiality protections afforded by statute which are intended to protect parties involved in family law litigation.[FN5]

These statutes permitting address confidentiality arose from the same public policy that sought to protect survivors of domestic violence through the creation of the New York State Address Confidentiality Program which the New York State Executive Law describes as, "There is created in the office of the secretary of state a program to be known as the 'address confidentiality program' to protect victims of domestic violence, victims of human trafficking, victims of kidnapping, victims of a sexual offense, victims of stalking, and reproductive health care services providers, employees, volunteers, patients, or immediate family members of reproductive health care services providers by authorizing the use of designated addresses for such victims and their minor children."[FN6]

The bill jacket for the legislation which established the New York State Address Confidentiality Program noted the asserted justification for the proposed law:
"Persons attempting to escape from actual or threatened domestic violence frequently establish new addresses in order to prevent their abusers from finding them. A victim of domestic violence who fears for his or her safety or the safety of his or her children and who has left his or her home as a result of domestic violence should be afforded the opportunity to keep their address confidential to prevent against the threat of domestic violence to themselves and/or their children.
Violence frequently escalates when batterers believe they are losing control of their victims. Statistically, the most dangerous time for survivors is during and immediately after their separation from abusers. When victims attempt to flee, they are at greatest risk of serious injury or death. Domestic violence offenders routinely pursue victims to new locations to further harass and abuse the survivor. Batterers often search public records to [*4]obtain their victim's physical address to stalk them.
This legislation would provide victims the ability to have their mailing address remain anonymous by providing a substitute address for them to use in lieu of their actual address. Upon receipt by the Secretary of State of a process or mail for a victim of domestic violence, the Department shall immediately forward such process or mail to the victim of domestic violence.
There are about thirty-three states that have some form of address confidentiality program. This legislation will enable interagency cooperation with the secretary of state in providing name and address confidentiality for victims of domestic violence, and will enable state and local agencies to accept a program participant's use of an address designated by the secretary of state as a substitute mailing address. In addition, this bill will enable state and local agencies to respond to requests for public records without disclosing the location of a victim of domestic violence."[FN7]
Therefore, while e-mail tracking technology may not provide the intended e-mail recipient's exact physical address to the e-mail sender, it may offer an approximate location by producing the recipient's city-level location where the e-mail was opened, violating the expectation of privacy of that individual and severely curtailing the intended protections afforded by the aforementioned address confidentiality statutes to the extent that the intended recipient is utilizing same. Here, no address confidentiality orders have been entered and neither party is involved in the New York State Address Confidentiality Program.
The use of e-mail tracking technology may also lead to a determination that a family offense[FN8]
 has been engaged in by the party utilizing such technology to the extent that they are found to be in violation of any of the applicble sections of the New York Penal Law such as stalking in the fourth degree which provides:
"A person is guilty of stalking in the fourth degree when he or she intentionally, and for no legitimate purpose, engages in a course of conduct directed at a specific person, and knows or reasonably should know that such conduct:
* * *
2. causes material harm to the mental or emotional health of such person, where such conduct consists of following, telephoning or initiating communication or contact with such person, a member of such person's immediate family or a third party with whom such person is acquainted, and the actor was previously clearly informed to cease that conduct; or
* * *
For the purposes of subdivision two of this section, "following" shall include the unauthorized tracking of such person's movements or location through the use of a global [*5]positioning system or other device."[FN9]
The use of e-mail tracking technology by Defendant to track e-mails sent to Plaintiff as the intended recipient may be determined to constitute unauthorized following of Plaintiff through the tracking of Plaintiff's movements or location through the use of a device. However, this Court has not been provided with any evidence that prior to the parties' stipulation, Defendant was clearly informed to cease e-mail tracking of e-mails sent by Defendant to Plaintiff. Nor did this Court make any determinations as to if such tracking was performed for a legitimate purpose, or if the Defendant knew or reasonably knew if such conduct would cause material harm to the mental or emotional health of Plaintiff. Here, there has been no application for a determination that Defendant engaged in a family offense or for any relief that may be granted following such finding.
However, following the initial e-mail tracking by Defendant of e-mails sent to Plaintiff by Defendant, the parties entered into a stipulation providing that neither party would, following the stipulation, utilize e-mail tracking technology for e-mails sent to the other. Both parties are now clearly informed to cease such conduct. To the extent that either party engages in prohibited e-mail tracking following the stipulation, such conduct shall be subject to review by this Court and may lead to a determination that the party violating the stipulation engaged in a family offense and/or contempt of Court, and may further lead to the imposition of sanctions.
Finally, with respect to the application of Plaintiff's counsel that the testimony of Defendant made during the trial with respect to his use of e-mail tracking technology be stricken from the record, this relief is denied as no legal basis exists for such relief.
Accordingly, it is hereby
ORDERED that pursuant to the stipulation of the parties; and until further agreement of the parties, order of this Court or conclusion of this action; neither shall utilize e-mail tracking technology for any e-mails sent to the other party; and it is further
ORDERED that Plaintiff's request for the testimony of Defendant pertaining to e-mail tracking is denied; and it is further
ORDERED that by February 22, 2025, Plaintiff's counsel shall serve a copy of this Decision and Order with Notice of Entry by NYSCEF filing, and by that date shall file proof of service with the Court; and it is further
ORDERED that any relief requested not expressly granted herein is denied.
The foregoing constitutes the Decision and Order of the Court.
Dated: February 20, 2025
White Plains, New York
ENTER:
Hon. James L. Hyer, J.S.C.

Footnotes

Footnote 1: See, "Email Tracking Patents Survive Sales Company's Challenge," 2017 IPDBRF 0102

Footnote 2: See, "Ethical Obligations of Lawyers Using Software to Track Email Sent To Opposing Counsel," 40-APR PALAW 56; See Also, "E-Mail Privacy Issues," 1 Information Law § 8:53; "E-Mail Privacy Issues," Law of Computer Technology § 17:48; It is unclear if such e-mail tracking technology may be used with applications which facilitate communication between parties by messaging such as OurFamilyWizard or TalkingParents which are often utilized in high conflict custody cases as the primary means of communication between parents in lieu of e-mails, telephone calls and text messages. 

Footnote 3: See, "How Does E-Mail Tracking Work," https://support.streak.com/en/articles/2447759-how-does-email-tracking-work

Footnote 4: See, "E-Mail view Tracking," https://support.streak.com/en/articles/2448073-email-view-tracking

Footnote 5: See, New York State Domestic Relations Law § 76-h(5); New York State Family Court Act §§ 580-312; 154-b; See Also, New York State Social Services Law § 459-h (providing for address confidentiality for residential programs for survivors of domestic violence)

Footnote 6: See, New York State Executive Law § 108

Footnote 7: See, New York Bill Jacket, 2011 A.B. 628, Ch. 502

Footnote 8: See, Espinal v. Burton, 167 AD3d 605 [2d Dept 2018]); See Also, New York State Family Court Act § 812

Footnote 9: See, New York State Penal Law § 120.45; See Also, A.S. v. A.B., 84 Misc 3d 692 [Kings Sup Ct. 2024]).